IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SCOTT RYAN MERRYMAN,<br><br>Defendant | CRIM. NO. JKB-22-050 |

**JOINT MEMORANDUM CONCERNING**
**STIPULATED FACTS BENCH TRIAL**

The United States of America and the Defendant Scott Ryan Merryman, by counsel, submit this joint memorandum in advance of the bench trial scheduled for February 19, 2025. The purpose of this brief is to provide the Court with background information concerning the pending counts, the elements of the counts, and the law pertaining to the defense of insanity.

**COUNTS OF THE INDICTMENT**

Scott Ryan Merryman is charged by indictment with two counts: Threats Against the President of the United States in violation of 18 U.S.C. § 871 (Count One) and Interstate Communication Containing a Threat to Harm in violation of 18 U.S.C. § 875 (Count Two). The charges arise from events during January 2022 and are further detailed in the Statement of Stipulated Facts.

**I.      Count One – Threats Against the President**

The elements of Count One are as follows:

- First, that the defendant mailed (or wrote or said) the words alleged in the indictment to be a threat to kill, to kidnap, or to inflict bodily harm upon the President of the United States;

1

- Second, that the words were in fact a threat; and

- Third, that the defendant made the threat knowingly and willfully.

*See* Sand & Siffert, *Modern Federal Jury Instructions* (hereinafter "Sand"), Instruction 31-2.

The factual stipulation contains the following relevant information: On January 27, 2022, Mr. Merryman contacted the White House switchboard and stated that he was "coming to the White House, and was going to cut off the head of the snake/anti-Christ." Stipulation at 7. The statement was threatening (referring to cutting off a head) and was directed at the President of the United States, as it clear from the context of the call, the fact that the call was made to the White House switchboard, and other statements that Mr. Merryman had made in various contexts, including his statement to a Secret Service agent that Mr. Merryman was "coming for…sleepy Joe. I'm talking about President Biden and you can quote me." Stipulation at 8. The facts stated in the stipulation likewise demonstrate that Mr. Merryman acted with the required intent when he made the threat. The phone call was made to the White House switchboard in Washington, D.C.; Mr. Merryman made the call from Hagerstown, Maryland. Stipulation at 8.

**II.     Count Two – Interstate Threats**

The elements of Count Two are as follows:

- First, that the defendant threatened to injure the victim, as charged in the Indictment;

- Second, that the threat was transmitted in interstate or foreign commerce; and

- Third, that the defendant transmitted the threat knowingly and intentionally.

*See* Sand, Instruction 31-7.

The factual stipulation states the following with respect to Count Two. Mr. Merryman made threatening statements to United States Secret Service Special Agent/Senior Resident Agent ("SRA") Greg Tiano. Mr. Merryman stated, "I'm coming for you bitch"; Mr. Merryman later stated, that he "had a bullet with [Tiano's] name on it"; and when asked by the Special Agent whether he was threatening a federal agent, Mr. Merryman replied "Yes, I am." Stipulation at 2. At the time of the phone call, Mr. Merryman was in the State of Maryland and SA Tiano was in the State of Kansas. The statement to SA Tiano was threatening on its face and was made during an interstate phone call. Stipulation at 2.

The stipulation also contains information showing that the Defendant made the statement to the Special Agent "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Elonis v. United States*, 575 U.S. 723, 741 (2015). The statements were plainly threatening and were made directly to the Special Agent. Under the circumstances, the statements are such that Mr. Merryman knew they were threatening and made them with an awareness that they would be perceived as threatening by the Special Agent.

## INSANITY DEFENSE

Section 17 of Title 18 of the United States Code sets forth the defense of insanity under federal law:

> (a) Affirmative Defense. — It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.
>
> (b) Burden of Proof. — The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

*See United States v. Gould*, 741 F.2d 45, 47 (4th Cir. 1984) ("A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.").

By way of additional background, Sand Instruction 8-10 would instruct a trial jury as follows with respect to a defense of insanity:

> You have heard evidence tending to show that the defendant was insane at the time that the crime was committed. The government has offered evidence tending to show that he was sane. The burden of proof is on the defendant to prove by clear and convincing evidence that he was insane at the time of the offense.
>
> Under the law, a defendant is not guilty if he was insane when the crime was committed. The law defines insanity to mean that a person is not responsible for criminal conduct if at the time of such conduct, as a result of a severe mental disease or defect, he was unable to appreciate the nature and quality or wrongfulness of his acts.
>
> When I speak about a mental defect, I do not refer to any particular medical term. (By the same token, the mere fact that a person may repeatedly engage in criminal conduct does not, in and of itself, justify a finding that he is insane.)
>
> If you unanimously agree that the defendant has proven the affirmative defense of insanity by clear and convincing evidence, then you must find the defendant not guilty by reason of insanity. If you unanimously agree that the government has proven each element of the offense beyond a reasonable doubt and you unanimously agree that the defendant has not proven this defense of insanity by clear and convincing evidence, then you must find the defendant guilty. If you cannot agree unanimously on whether the defendant has established the affirmative defense of insanity, then you cannot return any verdict on this charge.[1]

---

[1] An optional final paragraph to Instruction 8-10 advises the jury that a court will send a defendant found not guilty by reason of insanity to an institution until he proves in court that his release would not create a substantial risk that he might injure someone or seriously damage someone's property.

The factual stipulation references and quotes the findings by the Federal Bureau of Prisons following Mr. Merryman's forensic evaluation in September 2022. Stipulation at 9. BOP determined that Mr. Merryman's "grandiose religious delusions, in combination with an acute manic episode, appear to have played a direct role in the commission of the alleged offenses; and … Based on the available information, it is the opinion of the undersigned evaluator that Mr. Merryman was suffering" from a mental condition that "rendered him unable to appreciate the nature and quality or the wrongfulness of his actions at the time of the alleged offenses."

Respectfully Submitted,

| | |
|---|---|
| Erek L. Barron<br>United States Attorney | For the Defendant Scott Ryan Merryman |
| _____/s/_____<br>Thomas J. Sullivan<br>Michael C. Hanlon<br>Assistant United States Attorney | _____/s/_____<br>Sedira Banan<br>Assistant Federal Public Defender |

36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
410-209-4800